IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY W.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 24 C 3353 |
| v. ) | |
| ) | Magistrate Judge Gabriel A. Fuentes |
| LELAND DUDEK, ) | |
| Acting Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[3]

Before the Court is Timothy W.'s memorandum in support of reversing or remanding the Commissioner's decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") (D.E. 13)[4] and Defendant's motion for summary judgment to affirm the Commissioner's decision (D.E. 17).

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Leland Dudek for his immediate predecessor, Michelle A. King, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On May 16, 2024, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 8.)

[4] At the outset, Plaintiff appears to limit his argument to "specifically" claim that the ALJ erred as a matter of law in denying his claim for DIB. (D.E. 13: Pl.'s Opening Br. ("Pl. Mem.") at 1; D.E. 19: Pl.'s Reply Br. ("Pl. Reply") at 1.) Plaintiff is entitled to DIB if he can demonstrate he became disabled before his Date Last Insured ("DLI") of March 31, 2017. *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009); 42 U.S.C. §§ 423(a)(1)(A), (c)(1). Nevertheless, "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." *Sienkiewicz v. Barnhart*, 409 F.3d 798, 802 (7th Cir. 2005), citing 42 U.S.C. §§ 1381a, 1382; *Liskowitz*, 559 F.3d at 740 n.2. Despite Plaintiff's failure to specifically mention SSI in his briefs, he also appears to be seeking review of the denial of SSI benefits because he relies on medical records long after the DLI (his first neurologist appointment is a mere nine days prior to the DLI). Accordingly, the Court in

I.  **Procedural History**

Plaintiff applied for DIB and SSI on January 10, 2022, alleging a disability onset date of January 10, 2017. (R. 15.) After a hearing, the Administrative Law Judge ("ALJ") issued a written decision denying Plaintiff's applications on August 23, 2023, finding him not disabled under the Social Security Act (the "Act").[5] (R. 15-28.) This appeal followed.

II. **The ALJ Decision**

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity from his alleged onset date ("AOD") of January 10, 2017, through his DLI of March 31, 2017. (R. 17.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of Chiari malformation,[6] headaches, bipolar disorder, generalized anxiety disorder, and panic disorder with agoraphobia. (*Id*.) At Step Three, the ALJ found that Plaintiff's impairments alone or in combination did not meet or medically equal any Listing. (R. 18.) The ALJ assessed Plaintiff's so called "Paragraph B" criteria finding he had no limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 18-19.) The ALJ assessed Plaintiff as having a residual

---

its discretion does not find Plaintiff's appeal of the SSI denial waived. *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) (claimant's undeveloped arguments generally are waived).

[5] The Appeals Council subsequently denied review of the opinion (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

[6] "Chiari malformation (kee-AH-ree mal-for-MAY-shun) is a condition in which brain tissue extends into the spinal canal. It occurs when part of the skull is misshapen or smaller than is typical. The skull presses on the brain and forces it downward." Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/chiari-malformation/symptoms-causes/syc-20354010 (last visited March 27, 2025).

functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:

> avoid concentrated exposure to loud noise environments and intense bright lights including sunlight; frequent contact with the public; frequent handling and fingering bilaterally; and no fast paced production rate or strict hourly quotas but could meet end of day requirements.

(R. 20.)

At Step Four, the ALJ found that Plaintiff was capable of performing past relevant work as a Retail Manager and as a Child Welfare Caseworker (R. 26.) In addition to past relevant work, the ALJ found the Plaintiff capable of performing other jobs that exist in significant numbers in the national economy such as hotel housekeeper, sales attendant, and bagger. (R. 26-27.) Thus, the ALJ determined that Plaintiff was not disabled under the Act. (R. 27.)

### III. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054; *see Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025) (reiterating that Seventh Circuit "review proceeds with a light touch—not holding

ALJs to an overly demanding evidentiary standard and in turn reinforcing that claimants bear the affirmative burden of proving their disability"). The Seventh Circuit has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

**IV.     Analysis: The ALJ's Assessment of Plaintiff's Headaches Was Supported by Substantial Evidence.**

Plaintiff contends the ALJ erred in one aspect in rendering the decision, namely that in assessing Plaintiff's physical RFC, the ALJ did not account for the occurrence of debilitating headaches secondary to Chiari malformation with brain compression. (Pl. Mem. at 1.) Specifically, Plaintiff argues that the ALJ should have included in the RFC a provision for unscheduled off-task time due to his headaches. (*Id*. at 6.) Because Plaintiff only challenges the ALJ's decision regarding his headaches, Plaintiff has waived all other issues on judicial review. *Milhelm v. Kijakazi*, 52 F.4th 688, 693 (7th Cir. 2022) (arguments not raised before the district court are waived); *Schomas*, 732 F.3d at 708 (claimant's undeveloped arguments are waived).

Contrary to Plaintiff's assertion, the ALJ did not ignore evidence, but rather determined, after extensive discussion of the evidence (R. 20-26), that the longitudinal medical evidence reflected a "significant improvement in headaches," such that with medication, headaches only occurred about twice per month. (R. 21, citing R. 335, 340, 350.) The ALJ reviewed Plaintiff's testimony that prior to November 2022, he experienced two migraines per day and spent the entire

4

day in bed, except to shower, go to the bathroom, and eat, yet he never reported going to the emergency department or being hospitalized for headaches. (R. 21, 53, 57-58.) The ALJ acknowledged (around the timing of the DLI, March 31, 2017) that at Plaintiff's initial neurological consultation with Patricia Morgan, M.D., on March 22, 2017 (just days prior to the DLI), he complained of daily headaches of moderate severity associated with nausea, dizziness, scotomas, and photophobia. (R. 21.) Nevertheless, the ALJ noted that after Dr. Morgan had Plaintiff start preventative treatment with Topamax and abortive treatment with Maxalt, Plaintiff's headaches quickly improved with prescribed treatment. (R. 21-22, citing R. 325-29.) Less than a month after starting treatment, Plaintiff was down to two to three headaches per week (R. 22, citing R. 330), and by July 13, 2017, Plaintiff was only having two to three headaches per month lasting only about an hour (R. 22, citing R. 335). Dr. Morgan counseled Plaintiff to avoid headache triggers and continue medication, "since he has had significant improvement." (R. 22, quoting R. 338.) In addition, the ALJ noted that an April 6, 2017, MRI of Plaintiff's brain was unremarkable except for a Chiari 1 malformation. (R. 22, citing R. 361.)

Next, the ALJ discussed that about a year after the DLI, Plaintiff acknowledged on April 27, 2018, that Topamax had worked well, but he was still having two to three headaches per month. (R. 22.) Dr. Morgan instructed Plaintiff to titrate Topamax up from 50 mg to 100 mg. (R. 22, 344.) Plaintiff was again counseled to avoid headache triggers. (R. 344.) The ALJ discussed that on January 16, 2019, Plaintiff reported an increase of headaches to three times per week, but he had not increased Topamax as instructed, and Dr. Morgan provided him samples of Trokendi. (R. 22, 345, 349.) The ALJ continued that by February 14, 2019, Plaintiff's headaches had "significantly improved;" he was experiencing headaches "a couple of times per month" with no side effects from Trokendi. (R. 22, quoting R. 350.) In May 2019, Dr. Morgan continued Plaintiff on Trokendi

5

due to "significant" improvement. (R. 22, quoting R. 356.) Thus, the ALJ did not err in discounting the Plaintiff's allegations of headaches where they improved with treatment and medication. *See Patricia T. v. Saul*, No. 19 CV 614, 2020 WL 2767580, at *4 (N.D. Ill. May 28, 2020) (affirming ALJ decision where record evidence showed plaintiff's headaches were controlled on medication).

Plaintiff points to no further treatment for the next three years, until Fall 2022, when his migraine medication changed due to his insurance. The ALJ acknowledged that Plaintiff reported an increase in migraines at that point. (R. 22, citing R. 542.) The ALJ examined the records of Plaintiff's new neurologist, Kristen Zemina, M.D., whom he saw for an initial evaluation in January 2023 (R. 22, R. 637), including Dr. Zemina's January 30, 2023, report, in which Plaintiff described his headaches as "severe and debilitating" with "throbbing/stabbing pain" associated with "nausea/vomiting, as well as photophobia" which forces him to "lie down in a dark room for relief" and "lasts for the duration of the day" (Pl. Mem. at 6, quoting R. 681; 8.)

The ALJ also reviewed Plaintiff's testimony that he took preventative and rescue medication for migraines, but still experienced migraines once a day or every two days and experienced this frequency since he switched medications in November 2022.[7] (R. 21, 52-53.) The ALJ, however, also discussed Dr. Zemina's evaluation, pointing out that Plaintiff's medication reduced his headaches and specifically acknowledged Plaintiff's report to Dr. Zemina that his medication greatly helped in reducing his headache days from six to seven per week to two per week. (R. 22, R. 637.) The ALJ noted that Dr. Zemina's examination of Plaintiff was largely within

---

[7] The Court also notes the ALJ's review of Plaintiff's testimony that prior to November 2022 his headaches were "far worse", and that since 2017 he has experienced two migraines per day and spent the entire day in bed, except to shower, go to the bathroom, and eat. (R. 21, 52-53, 57-58.) Plaintiff also testified that he reported this to his doctors (R. 58), yet, as the ALJ discussed, his doctors' records establish that Plaintiff reported significant improvement on medication and reported only about two headaches per month. (*Compare* R. 21, citing R. 335, 340, 350 with R. 52-53, 57-58.)

normal limits (R. 22) and that Dr. Zemina started Plaintiff on Propranolol to help with his headaches and Sumatriptan for acute headache rescue. (R. 23, citing R. 640.) The ALJ remarked that by March 2023, Plaintiff reported to his mental health counselor that he had a different migraine medication that really helped him. (R. 23, citing R. 609.)

Plaintiff argues that given his testimony and his description of his headaches to Dr. Zemina, as well as the ALJ's assessment of his headaches as "severe," the ALJ erred by not including unscheduled time off task in his RFC. But there "is nothing improper or inconsistent about concluding that Plaintiff's headaches constitute a severe impairment … while also rejecting Plaintiff's statements regarding the limiting effects of those headaches." *Edson W. v. Saul*, No. 19 C 2626, 2021 WL 1293845, at *3 (N.D. Ill. Apr. 7, 2021). Moreover, as the Seventh Circuit has recognized, diagnosis does not necessarily equate to a disability. *See, e.g., Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (substantial evidence supported ALJ's determination that the plaintiff did not suffer irritable bowel syndrome (IBS) related fatigue, despite his IBS diagnosis and his testimony as to fatigue); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("The issue in the case is not the existence of these various conditions of hers but their severity and, concretely, whether, as she testified ... they have caused her such severe pain that she cannot work full time."); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("It is not enough to show that she had received a diagnosis ... since [the impairment] is not always (indeed, not usually) disabling.").

Here, the ALJ's analysis of Plaintiff's headaches was supported by substantial evidence. The ALJ determined that Plaintiff's headaches and Chiari malformation were severe impairments at Step Two of the analysis but that the record evidence did not support a frequency of migraines anywhere near listing level.[8] Nevertheless, the ALJ still accommodated for the headaches in the

---

[8] With regard to headaches, the ALJ stated: "Migraine/headaches are not listed specifically under any listing section. However, the neurological listings are one source of comparison for purposes of determining

7

RFC by providing for an avoidance of concentrated exposure to loud noise environments and intense bright lights, including sunlight. (R. 20, 23.) Despite Plaintiff's contention that these accommodations are an "invention out of whole cloth" (Pl. Mem. at 9-10), this was consistent with Plaintiff's doctors counseling him to avoid headache triggers. (R. 23, R. 338, 344.) In addition, the ALJ explained that Plaintiff's statements about his symptoms were inconsistent with the medical and other record evidence because the alleged frequency and intensity of his headaches were not supported by the medical record. (R. 21, 25.) The State agency medical and psychological consultants at the initial and reconsideration level found Plaintiff's medically determinable impairments to be non-severe. (R. 25.) The ALJ recognized that these opinions were not unreasonable, but in the RFC determination, the ALJ gave Plaintiff's testimony the greatest benefit reasonably consistent with the longitudinal record thus accounting for environmental limitations in the RFC to accommodate Plaintiff's headaches. (R. 25-26.) Additionally, the ALJ noted there were no record medical opinions that supported greater limitations. (R. 26.) *See, e.g., Thorlton*, 127 F.4th at 1081 (noting plaintiff bears the burden of presenting "evidence of limitations affecting their capacity to work"); *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023) (affirming where plaintiff "did not provide any opinion from a doctor who would have imposed greater restrictions than those the ALJ found in his decision"); *Charlotte W. v. O'Malley*, No. 21 C 6853, 2024 WL 1046903, at *4 (N.D. Ill. Mar. 5, 2024) (finding the plaintiff did not point to any medical opinion

---

equivalence at step 3. Most of the neurological listings require an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities. The claimant has not exhibited that kind of 'extreme' limitation of function due to the headaches. Another way to satisfy most neurological listings is if the neurodegenerative disorder results in a marked (rather than extreme) limitation of physical functioning (see 11.00G3a), along with a marked limitation in one of the following areas: 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or 2. Interacting with others (see 11.00G3b(ii)); or 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or 4. Adapting or managing oneself (see 11.00G3b(iv)). The claimant's functioning has been thoroughly evaluated, as reflected in the discussion of the evidence throughout this decision, but is not 'markedly' limited in any of the above areas due to the claimant's migraines." (R. 18.)

or evidence to show her headaches caused any specific limitations); *Cynthia H. v. Saul*, No. 19 CV 1962, 2019 WL 6893004, at *3 (N.D. Ill. Dec. 18, 2019) (finding plaintiff neglected to cite to any medical evidence to support her claim that headaches would cause her to be "off-task" more than 15 percent of the day). The Plaintiff relies on *Moore v. Colvin*, 743 F.3d 1118 (7th Cir. 2014) to support his argument that the ALJ did not connect the RFC limitations to the evidence of Plaintiff's headaches, but "this is not a case where the ALJ presented a 'skewed version of the evidence.'" *Thorlton*, 127 F.4th at 1082.

Furthermore, the ALJ expressed that Plaintiff's treatment was routine and conservative, with no greater intensity or escalation of treatment, and with prescribed medication there was significant improvement in symptoms. (R. 21.) *See Baptist v. Kijakazi*, 74 F.4th 437, 445 (7th Cir. 2023) (noting ALJ properly relied on plaintiff's conservative treatment history). Finally, the ALJ reiterated that the longitudinal medical evidence reflected a significant improvement in headaches, and, although there was one report that Plaintiff experienced headaches twice a week, the record overall reflected and supported that, with medication, Plaintiff's headaches occurred about twice per month. (R. 21, citing R. 335, 340, 350, 637; 22.) *See, e.g.*, *Warnell*, 97 F.th 1052-53 (holding where plaintiff alleged that she could not work due to debilitating migraines and chronic pain, substantial evidence supported ALJ's decision that the "record [did] not document sufficient objective medical evidence to substantiate the severity and degree of [the] functional limitations alleged by the claimant"); *Hammerslough v. Berryhill*, 758 F. App'x 534, 539 (7th Cir. 2019) (finding testimony of continuous, debilitating headaches to be contrary to the plaintiff's reports to his neurologist); *Metzger v. Astrue*, 263 F. App'x 529, 531-32 (7th Cir. 2008) (finding medical reports of headaches did not corroborate claims by the plaintiff of the types of headaches (one or two a day) he claimed were relatively constant and debilitating).

9

Plaintiff has thus not shown, despite his burden to do so, that his headaches caused limitations beyond those already included in the ALJ's detailed RFC determination. An RFC assessment, after all, need only incorporate limitations that are supported by the record. *See Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021). Because the ALJ reasonably considered the record evidence in finding Plaintiff's headaches controlled by medication, the decision is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's request to reverse and remand the ALJ's decision (D.E. 13) and grants Defendant's motion for summary judgment (D.E. 17).

**SO ORDERED.**

                                        **ENTER:**

                                        **GABRIEL A. FUENTES**
                                        **United States Magistrate Judge**

**DATED:  March 31, 2025**